Case number 09-2472, people v. Jose Rivera. Would counsel approach please, both counsel please. Good morning. You may have heard earlier we have 15 minutes per side and we'll give you a few minutes for rebuttal. If we're engaged in a colloquy, we don't usually do this or anything. We want to hear what you have to say. Okay, thank you. Let's proceed. Thank you very much. In the first issue, the appellant argues that under both the Zerr and Thompson line of cases, that the trial court's failure to inquire into the 431B principles requires remand under both plain error prongs. This is a case, Your Honor, where the parties agree that there was no compliance with the Supreme Court rule, which the Supreme Court itself mandates trial judges are required to comply with. So you can argue they give it and they take it away because they came up with the rule and then they issued Thompson, which says, yeah, you know, you can't violate the rule, but if you do violate the rule, they basically throw the burden back on you to show that a substantial right was violated, don't they? Well, in this case, and keep in mind that in many of the Zerr progeny and particularly Thompson, there was some noncompliance. In this case, it's across the board. And this case is, in fact, one which Thompson points to as a case which needs to be reversed because it fits both prongs of the plain error rule. In the first prong, closely balanced test, what we have here from the defense theory, two adolescents who give convoluted stories, there's no physical evidence. Are you suggesting that the evidence here was closely balanced? What I am suggesting, Judge, is that if we had had a screen jury, they could easily have accepted the defense theory here, and I will explain why. First of all, as I said, there's no physical evidence. There was no timely outcry. There were so many discrepancies with these two young women. With Jessica Muniz, she testifies there was vaginal intercourse and yet her hymen is intact. She's a 13-year-old girl who offers up her friend as a sex partner to avoid having sex with the defendant. She testifies that the defendant ejaculates on her face and that of her friend, Jessica Torres, and in fact, she even says he ejaculated all the time. And yet she also testifies he wore condoms, and in fact, she insisted on it. Muniz says that Torres refused to perform oral sex on Muniz, whereas Torres says she did. Muniz only recalled one act with her friend, whereas Torres recalled four. Muniz never says Torres is blindfolded. Torres says she was. With Torres, she testifies to four sex acts, three of which required her to ride a bicycle to and from, round trip, three hours, to and from the defendant's home to become a victim. One of the four had her being picked up in a pickup truck by the defendant and Jessica Muniz to be taken to the residence for the sex act, even though Muniz never testified to this. Torres says she performed the sex acts because she was afraid of being sued by a Cindy and that her family would lose their home. Yet Muniz alleges that this was the reason for her participation, that Torres was participating to help her as a friend. Torres, in fact, adopts Muniz's story, and now she's afraid of being sued by the mysterious Cindy, and she's afraid her parents are going to lose their home. As I indicated, a screen jury could have been troubled by these inconsistencies, which I submit are major, and accepted the theory that we had here as two troubled girls with motives to bring a false charge. Under the second prong, which Thompson cites as a structural error is needed, what we have here is a biased jury. Now, the record shows that there was a juror named Dana Cox who indicated during voir dire that she had been a victim of a crime not once, but I believe at least twice and maybe more than that. Defense counsel at that time still had a preemptory challenge. He did, he did, and she says... Doesn't that negate the problem there? It doesn't, and here's why. She said when asked, would these experiences cause you to not be fair, and she said, they may. So counsel then asks to challenge her for cause, which is denied. Now, he's got one left, and because she's not being screened by the 431B principles where she can say that she can understand and accept these, he doesn't have enough information to know whether or not she can be fair. In fact, the judge in this case doesn't even ask her whether she can follow the law. And there are some cases that have come up since there where they discuss, well, you know, if there's a casual comment by the court about the principles and we have a closing argument, then that mitigates it. But in this case, ironically, we don't even have a correct closing argument. We've got a closing argument on the presumption of innocence that where the court tells the jury that the defendant retains the presumption of innocence until the jury is convinced that he's been proven guilty beyond a reasonable doubt. Not unless they are convinced. And it's subtle, but what it's communicating to the jury is that you will be convinced, but just don't do it before this one point in time. Counsel, being mindful of your time, if I could, could we hear from you on the subject of the plea-related statements and the child pornography charge? Your Honor, with regard to the plea-related statements, right out of the starting gate, so to speak, of the plea-related statements, there are three, so to speak, in the opening statement, the state tells the jury that defendant tried to broker a deal at the police station. And then they move on to the witnesses where they bring this up. Where you have the felony review assistant who testifies that defendant wanted guarantees, he wanted probation before he would speak. And then it's not just once, but then there's repeatedly through a colloquy between the state and the witness. And then they bring in the investigating officer and the exact same thing. And then besides eliciting the testimony and arguing, or bringing it out in the opening statement, they argue in closing argument. The defendant set the terms under which he would plead guilty. And in the Supreme Court world of this issue, this can't be harmless. Friedman, Hill, and others that I've cited in my brief, this can't be harmless. The statements have to show a rudimentary beginnings of a plea negotiation. And what could be more rudimentary, in fact, far than that, is to say the defendant tried to broker a deal at a police station. And again, this can't be harmless. These statements made to the prosecuting officer more than meet that criteria. Your Honor, with regard to the other one you mentioned, are you referencing the actual? The child pornography charge for the 11-second video clip. The video tape of 13. Whether or not it met the child pornography? Okay. With regard to that, Your Honors, I submit that the court needs to look at that. And in looking at that, you cannot tell that this individual in there is 13. You simply can't tell it. It could be, as I indicated in my brief, that females come in all different shapes and sizes, and you can have someone who is 18 and have an underdeveloped body. And you know what's really surprising, I think, is that they even brought this charge because when you, I think the court could take judicial notice that when you have these type of cases, you have many pictures when you're prosecuting a child pornography. Not just one. Well, there was some evidence here that there may have been some destruction of evidence. You have to admit that. The computer's disassembled? There's stuff that's been burned in the sink? Your Honors, again, I don't, with all due respect, I don't have to admit that because we argued those issues in the brief, that the defendant gave an explanation for what had burned in the sink, and even the state's witnesses said they couldn't tell what it was. And with regard to the computer being disassembled, there actually was no competent evidence to say when that computer stopped functioning. And there was simply no physical evidence that was recovered to say that defendant had destroyed anything. Back to the pornography charge and the testimony about the individual involved in that act on that particular day. In that video clip, how would you credit or discredit the state's witness, the investigator who testified? Mr. Griffin? Well, because he relied solely on the fact that the person had an underdeveloped, had underdeveloped breasts. As I recall, that's it. That's all he said. We've looked at the tape. The breasts were never shown, were they? It's from the back. Well, no, the only time that you see the female participant's breasts is when she's in a sweater and bra. And I actually didn't recall that, but that's even more to the point, that there simply wasn't any evidence. This is not a child pornography charge where you have small children. And that is, frankly, where you know that this is child pornography, but not that gray area where, in fact, as I pointed out in the brief, that these can be simulated. You could have an adult. You could have a different face put on. There's just too much. If this is child pornography, then the child pornography statute, it's unconstitutional as applied. Because this doesn't prove to be out of reasonable doubt. Anything further? We'll hear you in rebuttal. Okay. Thank you very much. Thank you. Good morning. May it please the Court. My name is Peter Fisher. I'm an Assistant State's Attorney. On behalf of the people. This morning I'm going to refer to the two victims of this case as JM and JT, because I believe that's the way they should be referred to in these matters as juveniles. The first issue relates to the Zaire, Thompson, Glasper line of cases. I argued Glasper and Thompson. The Supreme Court has indicated in Glasper and then again in Thompson that it's, I think you can say, kind of sick of this issue. And the second prong argument, the second prong argument is dead. There is no second prong argument here. They made very clear in Thompson that structural error refers to those things that the U.S. Supreme Court has already referred to as structural error. This is not one of them. I would agree if there's some evidence that there's actually a biased juror, not speculation that maybe this juror had a bias, and this juror, as Your Honor pointed out, could have been stricken, there was still a peremptory left. And frankly, had the juror said anything that would have indicated bias, there would have been a for-cause motion, and there wasn't a viable for-cause motion here. This juror, there's no evidence in this record that these jurors couldn't be fair, so frankly, Thompson is dead on the second, the Zaire-Thompson issue is dead on the second prong. With regard to the first issue, we assert that the evidence, in fact, was overwhelming here. Counsel began with a statement that was actually stricken by the trial court, was made several times during trial, that there's no evidence of a broken hymen here. Frankly, the evidence was that tests were negative. Now, I suppose they're arguing that this is a reasonable inference, but that's a little stretch. That's a very specific comment. And the testimony was just that there was one attempt, a brief attempt of a minute at vaginal... Right. And technically, that is penetration, touching of the genital contact is penetration under the statute, so there doesn't have to be penetration as a lay person might find it. So the broken hymen is not dispositive, even if it were evidence, but as I said, the trial court specifically told counsel that wasn't evidence and struck counsel's comments, and so it really isn't part of the record. What about the attempts to plea bargain, though, counsel, if I could gently urge you to comment on that? I understand that. I don't think these were attempts to plea bargain, Your Honors. Basically what happened, we have the defendant in custody, make several statements along the lines of, first of all, I'd like a glass of water. Second, I'll confess if you give me probation. Guarantee, he wanted guarantees. Well, he wanted probation, he wanted guarantees. It's important to remember that he brought this up, no one suggested it to him. The Freedman case, the Illinois Supreme Court case, talks about the two prongs, the defendant has to exhibit a suggestive expectation to negotiate a plea, and the expectation was reasonable under the totality of the objective circumstances. Just in terms of the factual scenario, just to make sure we have it right, he came into the police station while his wife and his stepdaughter were still there, and he was taken into custody, and he was there for a period of time. He was there for hours and hours and hours, and signed an indication that he would talk to them, right? There were conversations going on. Well, there were, but they weren't in general. You have to remember also, what happened was, the girl makes her outcry to a fellow student in class, it goes to a teacher, it goes to a social worker, the social worker calls the assistant principal, finally the police come, take her to the station. Now when she gets to the station, the police call mom. Mom's at work, and they tell mom, your daughter's here, now remember the defendant's the stepfather, and this is the natural mother, your daughter's here, we'd like you to come to the station alone. Don't tell the defendant you're coming, and that's significant because of what's happening back at the ranch, where he's disassembling, we can assume, the computer and burning something in the sink. And the timing's important, so then he runs to the station, or drives to the station, shows up, and they haven't finished talking to the girl yet. And we know, just from reading the transcript, she had hours of things to say, and so they had to get a handle first on what it was she was saying happened before they talked to him, so there was a gap here. And eventually they did talk to him, and he finally says, and the timing here's interesting too, because he finally says, I'll talk to you, but I'd like some guarantees, and I'll make a confession. And it's at that time that his lawyer shows up at the station. And the police do the right thing, they say, okay, here's your lawyer, talk to your lawyer, and that, of course, relates to why that conversation was terminated. Not because he said, I want to remain silent or anything else, it was terminated because his lawyer showed up and the police let him meet with his lawyer. At that point, the lawyer and he assert his right, he goes, and the police scrupulously honor that, he goes into the lockup, and he reinitiated contact several times. And then several hours later, at that point, it's a detective and an assistant state's attorney who are talking to him, and again, they start talking to him, and they say, and he says, he wants some guarantees, and they say no. So there's no back and forth, it's always him, and they say no. In this area here, the colic we were having here, the dialogue, we're not talking really about the motion to suppress, but rather the admission of the plea-related statement. So if you look at the Friedman case that says that if the rudiments of plea negotiation are present in the testimony, or in the statements, that they can't be admitted. How does that not, you know, suggest that this should not have been heard by the jury? Well, the first reason is that they never asked that it not be heard by the jury. They waived this issue. They didn't ask that this be suppressed on that basis, and you have to ask specifically. In this case, this statement they moved to have suppressed because it was, according to them, a violation of his right to have his silence scrupulously honored. In other words, it was a violation, and there was no prior... No, I understand, and we're not, you know, in this particular dialogue, we're not... But that was the only, that was the only thing they ever asked. They never said suppress this statement because it's plea negotiation. That wasn't done at trial, it wasn't done before trial, it wasn't done in the post-trial motion. Okay, but if we look at it under, as we are obliged to do under a plain error analysis... Under plain error. Is that type of testimony where the defendant says, you know, I'll give you a confession, if you can guarantee I'll get probation, and then it's argued in closing argument, those are inculpatory statements. Isn't that something that could rise to the level of plain error? Well, if it was a plea-related statement, sure, but it wasn't, and I don't think it meets the tests under Friedman. And Friedman itself recognizes that these cases, you have to differentiate between those things that are admissions and those things that are plea negotiations. In this case, unlike many of the cases cited by the defense, he hadn't been charged yet. He hadn't had an attorney, you know, in an adversarial setting. There was no charges to plead to. There was nobody that when he first brought it up, there was just a police officer, there wasn't even... There wasn't even a plea to plead to what was being alleged. I mean, in one of the conversations, when the police officer talked to him, he said, you've got more problems now, we just found out about a second victim. Yes. I mean, it seems like it's not a stretch to call this an attempt to plea. Well, he says, I'll confess. He doesn't say, he doesn't want to go to jail, that's clear, but there are no, there's no formalities, obviously, and that goes into the totality of the circumstances. Who he's talking to, the first time it's a detective, then it's a detective state attorney. He talks to the detective and the detective, there's no back and forth. There's, you do this, we'll do this. The minute he says it, they stop and say no. The cases, though, that would sort of help you out, based on my recollection, are the ones where the defendant says, you know, I'll cooperate, or I'll talk to you, I'll see what I can do. But here, it's a lot stronger because on several occasions he says, I'll give you a confession. Yes. And that's the issue that we're dealing with. Well, I don't think it's really much different than what the court was talking about in Hart, and then they cite the Levy case, the federal case, where we talk about an offer of cooperation evidence as a consciousness of guilt. The same in the Ramirez case, a 1993 First District case. And there, of course, the child judge was asked whether or not this was a plea related, so we didn't even have, you know, it was not a waiver issue. Counsel, let me jump in for a second. Maybe I'm trying to help. I am trying to help. Is this similar or more akin to a situation where someone's caught with his hand in the till, and he says, oh, you got me. I mean, that's an admission. You know, that could come in. Yes. As opposed to somebody saying, I want to begin to negotiate, I'm willing to confess and cooperate and work with you. And this is in between those two things, isn't it? It is, but I would say it's very akin to the statement, I'd like to cooperate, I'd like to give you information. Without saying, in return for. Right. And he never... See, that's where the word guarantee troubles me. I mean, you say, I want a guarantee. It's a quid pro quo. I'll give you a confession, but you have to give me guarantees. That sounds like a bargain to me. It has to be reasonable. And for him to be facing, as you say, he knew that there was some trouble. For him to be saying, I want a guarantee that it's going to be probation or that I'm not going to jail, that would be... I would say it's a reasonable thing to say because he's clearly... They're not going to give him probation. Right. It's clearly unreasonable. It's a ridiculous thing for him to say. He knew what he was facing. Our argument, of course, was that he knew what he had been doing over the course of these several years. And to argue that he would be someone who would be worthy of consideration for just a pass. If I could, on the child pornography charge. Certainly. The evidence was an 11-second videotape. And you had an investigator who came in and said that he went through the files on this DVD. And one of them that jumped out was 13-year-old Give Head. Yes. That was the testimony, right? Yes. On a DVD that said Jose's stuff. Right. Next to his computer, in his house, the computer that he had access to knew the passwords to and everything else. We looked at the file, however, the DVD. And what it is is they're all numbered, one through whatever. And this one happens to be numbered 13. And the abbreviation, year old, doesn't appear on there at all. I mean, there's no evidence. It says 13. It says 13. Yes. And before it was 12, a picture of a porn star. And there was another one numbered, I think, 15. 14 was missing afterwards, which was another, appeared to be sort of an adult porn star shot. There was some adult pornography on there as well, yes. Well, as a matter of fact, what the investigator testified to is that it was all, quote, garden variety adult porn, except for this one that got his attention that said, 13-year-old Give Head. Yes. In a case where you're talking about two 13-year-olds, the difference between a file numbered 13 and 13-year-old, would you admit, could be significant? It could be significant, but I think, again, what the jury, and again, his testimony, in terms of whether or not he thought there was a 13-year-old, it wasn't even necessary. It was an additional thing. But it was objected to. Defense counsel did object. That was objected to. Not his qualifications on the computer forensics, but the defense counsel did object to his ability to offer an opinion as to the female participant's age. And he said, in his opinion, based on her being small in stature and having underdeveloped breasts, that she was definitely a juvenile. Yes, he did say that. And, again, he was qualified as an expert. In what, though? In computers and child pornography. And an expert is not necessary for this. And the jury is entitled to just view it. It's one of those, like obscenity, we know it when we see it type things. So the jury is entitled, if we just introduced that clip by itself, that would be enough to prove the defendant guilty. We've seen the clip. And I don't know how you can say, look at it, and that's definitely a juvenile. I just don't know how you can say that. Well, the female participant does not clearly look like she's anything like 13 or under 18. And the female participant is never unclothed. You can't see her breasts developed or otherwise. Well, you can make an assumption even from clothes, but of an underdevelopment. But the important thing is that the test here is the traditional reasonable doubt test. It's whether any reasonable trier of fact could determine based on viewing that clip whether or not a juvenile was involved. And I would assert that based purely just on that tape alone, the jury could make that assumption. The other thing to remember with both the child pornography charge and also with the comments about the plea negotiations is you take those two things out and the case is still monumentally overwhelming on all the other charges. I think they went to trial originally with 41 counts. They started with 41. They went with 23. The defendant is convicted of numerous counts. We have conceded on one particular count. But the fact of the matter remains that on the major counts, if you exclude that evidence, the evidence alone of the two young girls, and they gave, there were dozens and dozens and dozens of instances of abuse in this case. So to hold this girl to complete uniformity between the two girls, it's not hard to understand why JM would not remember everything that happened to JT. JM was abused dozens if not hundreds of times. Her testimony was virtually unimpeached. If this was all made up, she's a tremendous actress. She was able to tell the same account and she was never impeached with any major discrepancies from the beginning to the end. Starting with this unreal, bizarre story of getting in a band. But you could see how it would happen to her and she admitted, I thought this was a great thing. We were going to have a band and I was going to get these clothes. You understand how she could fall into this type of thing. I don't think you have much issue there. There's plenty of evidence. But the question is really whether putting in the statements about I'll give you a confession and whether or not sort of piling on with this pornography charge with an 11 second clip of somebody who's never naked and doesn't really look like she's a minor whether or not that made it an unfair trial. And I would of course assert that it didn't. And the statements that were asserted to be plea bargaining statements clearly they are admissions.  The reason they didn't want them in at trial is because they weren't admissions. And again they didn't raise this issue at trial they only raised the suppression issue. But they looked at these as inculpatory as even Friedman and all those cases talk about these are inculpatory statements. The question is is there an additional factor. We're arguing under the two prong test under Friedman that there's not the additional factor. And if you look at the other cases that we've cited in the brief I think you'll find that this case is more like those cases than like somebody who's been charged and they actually get into the real what everybody would recognize as plea negotiations. Because the defendants had no subjective reasonable belief in this case that he was really bargaining for jail time or not jail time. So in view of that we'd ask that your honors affirm the defendant's convictions and sentence. Thank you. Your honors, just briefly with regard to the plea bargain issue there is no case that I recall saying that says anything about charges having to be brought when the defendant starts the plea bargain. And that simply is not a requirement here. Secondly, the state brings up the Hart case which they cited in their brief. And in that case the defendant in speaking to a police officer says well what can you do if I cooperate? And the reviewing court says there's no rudimentary evidence of a plea negotiation there. And in the Ramirez case also cited by the state the defendant again to a police officer brought up well I have money at my house, I can post it for bond I can turn informant, I'm afraid of going to jail because of a vendetta from the gang. And the court again said well the defendant's not making any terms under which he would plead guilty. But in this case he did. He said I will take probation. And I don't know how more rudimentary that can be. And what's interesting is that while it is not required that the defendant be speaking to an attorney when he attempts to negotiate a plea while it's not required in this case he did. He spoke to the felony review assistant. And to say that, to argue well the felony review assistant doesn't have the authority to negotiate a plea with him well that's not the issue here. The issue is did the defendant attempt to negotiate a plea and was it brought to the jury's attention. And then very briefly your honors with regard to the first issue the second prong under there I'd ask the court to remind I'd ask the court to draw attention to the fact that there was a biased jury here and in fact it's indicated by the fact that they ended up finding him guilty of an offense that there was no evidence of. The criminal sexual assault charge that defendant raised in count 10 which the state concedes there was no evidence of. Thank you very much. I'd ask that the judgment be reversed. Thank you counsel. We appreciate your submissions. Thank you very much.